1          IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MASSACHUSETTS
2

3    UNITED STATES OF AMERICA,        )
                                      )
4              Plaintiff              )
                                      )
5         -VS-                        )   Criminal No. 15-10076-ADB
                                      )
6    WILLIAM FACTEAU and             )
     PATRICK FABIAN,                  )
7                                     )
               Defendants             )
8

9

10                **JURY INSTRUCTIONS PART II**
                      **July 15, 2016**
11

12

13

          BEFORE THE HONORABLE ALLISON D. BURROUGHS
14              UNITED STATES DISTRICT JUDGE

15

16

17                        United States District Court
                          1 Courthouse Way, Courtroom 17
18                        Boston, Massachusetts  02210

19

20

21

22

                   KELLY MORTELLITE, RMR, CRR
23                  OFFICIAL COURT REPORTER
                   United States District Court
24                 1 Courthouse Way, Room 5200
                       Boston, MA  02210
25

1   A P P E A R A N C E S:

2        SARA MIRON BLOOM, ESQ., WILLIAM D. WEINREB, ESQ., and
    PATRICK M. CALLAHAN, ESQ., Assistant United States Attorneys,
3   Office of the United States Attorney, 1 Courthouse Way,
    Room 9200, Boston, Massachusetts, 02210, for the Plaintiff.

4
         RAQUEL TOLEDO, ESQ., United States Department of Justice,
5   450 Fifth Street, NW, Washington, D.C., 20001, for the
    Plaintiff.

6
         LEO CUNNINGHAM, ESQ., Wilson Sonsini Goodrich & Rosati, PC,
7   650 Page Mill Road, Palo Alto, California, 94304, for Defendant
    William Facteau.

8
         REID H. WEINGARTEN, ESQ., WILLIAM T. HASSLER, ESQ.,
9   JESSICA L. URBAN, and SHAWN P. DAVISSON, ESQ.,
    Steptoe & Johnson, LLP, 1330 Connecticut Avenue, NW,
10  Washington, D.C., 20036, for Defendant William Facteau.

11       MICHAEL J. PINEAULT, ESQ., Clements & Pineault, LLP,
    24 Federal Street, Boston, Massachusetts, 02110, for
12  Defendant William Facteau.

13       FRANK A. LIBBY, JR., ESQ., KRISTEN A. KEARNEY, ESQ.,
    DANIEL C. LAPENTA, ESQ., and BRIAN J. SULLIVAN, ESQ.,
14  LibbyHoopes, P.C., 399 Boylston Street, Suite 200, Boston,
    Massachusetts, 02116, for Defendant Patrick Fabian.

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

* * * * * * * * *

THE COURT:  I'm in the homestretch here.  All that's left is my charge, and the case will be yours.  The charge is my opportunity to educate you about the law that you need to apply to the facts as you find them, so you can imagine in this case it's dense and it's complicated.  Because you've only been sitting for an hour at this point, I'm going to start the charge, do the first slug of it, and then give you your break just so you don't end up sitting too long all at one time.

You've heard the first portion of the charge.  That doesn't mean it's the most important part of it.  You're going to hear the last part of it today.  That doesn't mean that's the most important part of it.  It is all equally important.  We're just trying to split it up to make it digestible to give you a reasonable schedule.  So it is all important.

So as I said, I'm going to do one slug now, give you a break, and then finish it off.  Now I turn to the indictment in this case and the statutes on which it is based.

First, I remind you that an indictment is not evidence of any kind against the defendants.  The indictment is just an accusation filed in writing with the Court to bring a criminal charge against a defendant.  As you've heard, the indictment in this case has 14 counts.  Count 1 charges both defendants with conspiring to commit violations of the Federal Food, Drug and

Cosmetic Act, which makes it unlawful to introduce or cause the introduction of adulterated and/or misbranded medical devices in interstate commerce.

Counts 5 through 7 charge both defendants with wire fraud. That is participating in a fraudulent scheme to distribute the Stratus for an intended use not cleared or approved by the FDA and concealing the conduct all to increase the valuation and revenues of Acclarent and using specific e-mails or wire transmissions in furtherance of the scheme.

Counts 9 through 18 charge both defendants with substantive violations of the Federal Food, Drug and Cosmetic Act based on the allegation that they introduced or caused the introduction of a misbranded and/or adulterated device in interstate commerce and that they did so with the intent to fraud or mislead.

As we discussed at the outset, there are gaps in numerical sequence. If I did not mention a count, that is because there is no count with that number in this case. Missing counts are not relevant to your deliberations and you should draw no conclusions from the numbering.

Both defendants deny that they are guilty of these charged offenses and are presumed to be innocent. Again, if you find a defendant guilty, the government must prove each element of a charged offense beyond a reasonable doubt.

I'm now going to talk to you about the provisions of

1    the Federal Food, Drug and Cosmetic Act, also referred to as

2    the FDCA, that will be relevant to your consideration of the

3    charges in this case.  The FDCA requires that most new medical

4    devices, unless exempted, be approved or cleared by the Food

5    and Drug Administration, or FDA, before they can be introduced

6    in interstate commerce.  The FDCA also prohibits the

7    introduction into interstate commerce of misbranded and

8    adulterated medical devices.

9         The FDCA classifies medical devices according to the

02:06 10   risks associated with their use.  There are three classes that

11   can be assigned to a device -- Class I, Class II or Class III.

12   Each class is subject to different regulatory controls with

13   Class I devices getting the least scrutiny and Class III

14   devices getting the most.  Device classification depends on the

15   technology and the intended use of a device.  Thus, a single

16   device can be assigned to different classes based on different

17   intended uses, and similarly, two devices that are otherwise

18   the same can be assigned to different classes based on

19   different intended uses.

02:06 20        Any device that was not distributed before May 28,

21   1976, is automatically classified as a Class III device unless

22   that device has otherwise been classified by the FDA as a Class

23   I or Class II device.  The government and the defendants have

24   stipulated, that is agreed, that the Stratus was not introduced

25   into interstate commerce prior to May 1976.

1          A device classified as a Class III device must be

2     approved by the FDA before it can be distributed in interstate

3     commerce.  This is generally accomplished through the Premarket

4     Approval, also called the PMA, process, which involves the

5     manufacturer of the device submitting a premarket approval

6     application to the FDA.  Once a manufacturer of a Class III

7     device has submitted a premarket approval application to the

8     FDA, the FDA will approve the PMA for the device only if the

9     information in the PMA provides the FDA with reasonable

02:07 10     assurance that the device is safe and effective under the

11     conditions of use recommended in the device's proposed

12     labeling.

13          A device can be removed from the automatic Class III

14     designation, bypass the PMA process, and be assigned to either

15     Class I or Class II if the manufacturer obtains a Section

16     510(k) determination or order of "substantial equivalence" from

17     the FDA for the device's intended use.  "Substantial

18     equivalence" means that the device has the same intended use as

19     the predicate device and the FDA has found that the device has

02:08 20     the same intended use as an already cleared Class I or Class II

21     "predicate" device, and, in addition, that (1) it has the same

22     technological characteristics of the predicate device, or, (2)

23     if the technological device's characteristics are different,

24     that the device is at least as safe and effective as the

25     predicate device and does not raise different questions of

1    either safety or effectiveness than the predicate device.

2         A manufacturer seeking to obtain a determination of

3    substantial equivalence for a new device must submit a

4    premarket notification, also referred to as a "510(k)

5    submission," to the FDA at least ninety days before the

6    manufacturer intends to start commercially distributing the

7    device.

8         "Intended use" is a defined term under the FDCA and

9    its regulations, meaning that it doesn't necessarily have what

02:08 10    you might think of as its usual, everyday meaning.  During the

11    510(k) review process of the FDA's determination of whether a

12    new device's intended use is the same as the predicate device's

13    intended use is based solely on the manufacturer's proposed

14    labeling for the new device, which must be part of the 510(k)

15    submission.  A manufacturer's submission of labeling and its

16    statement in intended use in the 510(k) notification means that

17    that is the intended use for which the manufacturer seeks

18    clearance under section 510(k).  The manufacturer is not

19    required to submit all possible or contemplated uses of the

02:09 20    device in its 510(k) notification.

21         When determining that a device is substantially

22    equivalent to a legally marketed device, the FDA may require a

23    statement in the labeling that provides appropriate information

24    regarding a use of the device not identified in the proposed

25    labeling if the FDA determines and states in writing (1) that

1    there is a reasonable likelihood that the device will be used

2    for an intended use not identified in the proposed labeling for

3    the device; and (2) that such use could harm.

4         If the FDA issues a "substantial equivalence" order

5    for a device, the manufacturer may then market the device for

6    the intended use described in the 510(k) submission.

7         A device that is cleared by the FDA may be legally

8    used by physicians for uses other than the use for which it is

9    cleared or approved.  This is referred to as off-label use.

02:10 10    Physicians are legally permitted to use a cleared or approved

11    device for any purpose including an off-label purpose.

12    Off-label use is common.  A device cleared under the 510(k)

13    process is not adulterated or misbranded merely because a

14    physician uses the device for an off-label purpose.

15         Although the FDA and FDCA regulate the marketing of

16    medical devices, they do not regulate the practice of medicine

17    or how physicians use medical devices, nor do they limit the

18    authority of doctors to use medical devices that have been

19    approved or cleared for one use for a different, unapproved, or

02:10 20    uncleared use.  The FDA does, however, regulate manufacturers

21    in their distribution of medical devices by prohibiting them

22    from distributing medical devices for any intended use that has

23    not been FDA-cleared or approved.

24         Merely distributing a device with knowledge that it

25    will be used for a use other than the use cleared or approved

1    by the FDA is not fraudulent or illegal.  That being said, if a

2    manufacturer has received 510(k) clearance to distribute a

3    device for one intended use, it may not distribute the device

4    for a significantly different intended use unless it obtains a

5    new 510(k) clearance or a PMA approval for the device with that

6    new intended use.  I will explain what is meant by "intended

7    use" in the distribution context a bit later in these

8    instructions.

9            Off-label promotion refers to promoting a device for

02:11 10   an off-label use, meaning an intended use that has not been

11   FDA-cleared or approved.  It is not illegal in and of itself

12   for a device manufacturer to provide truthful, not misleading

13   information about an off-label use.  The FDCA does not prohibit

14   or criminalize truthful, not misleading off-label promotion.

15   You may not convict the defendant of a crime based solely on

16   truthful, non-misleading statements promoting FDA-cleared or

17   approved device, even if the use being promoted is not a

18   cleared or approved use.  Over the course of this trial you've

19   heard evidence about a number of statements, marketing claims,

02:12 20   and other communications about the Stratus.  It is up to you to

21   decide whether a statement is truthful and non-misleading or

22   whether it is false and misleading.

23           The indictment in this case does not charge any

24   defendant with the crime of promoting a device off-label,

25   because that is not itself a crime.  Rather, the FDCA crimes

1  charged are conspiring to introduce and causing the

2  introduction of devices in interstate commerce that were

3  adulterated or misbranded.  Although you may not convict a

4  defendant of a crime based solely on truthful, non-misleading

5  statements regarding off-label use, even truthful statements

6  about an off-label use can be considered as evidence.  To put

7  it another way, to convict there must be a criminal act.

8  Truthful, non-misleading speech cannot be a criminal act in and

9  of itself, but it can be evidence and therefore used by you to

02:12 10  determine whether the government has proved each element of

11  each offense beyond a reasonable doubt, including the element

12  of intent.

13       As I have mentioned, "intended use" is a defined legal

14  term.  I have previously instructed you on the meaning of

15  "intended use" during the FDA's 510(k) clearance process.  I

16  now will instruct you on the meaning of "intended use" as it

17  applies outside the clearance process.

18       The term "intended use" refers to the objective intent

19  of the manufacturer or seller of the device.  The intent is

02:13 20  determined by such person's expression or may be shown by the

21  circumstances surrounding the distribution of the device.  This

22  objective intent may, for example, be shown by labeling claims,

23  advertising matter, or oral or written statements by such

24  persons or their representatives.  It may be shown by the

25  circumstances that the device is, with the knowledge of such

1    persons or their representatives, offered and used for a

2    purpose for which it is neither labeled nor advertised.  A

3    device can have more than one intended use.

4         Mere knowledge that doctors are using a device for

5    purposes other than its labeled use does not give rise to a new

6    intended use.  Off-label promotional statements can constitute

7    evidence of an intended use, although truthful, non-misleading

8    speech alone cannot be the basis for a criminal conviction.

9    Neither the First Amendment nor any other law, however,

02:14 10   protects false or misleading speech.

11        In addition, it is permissible to respond to

12   unsolicited requests for information about FDA-regulated

13   medical products by providing truthful, balanced,

14   non-misleading and non-promotional scientific or medical

15   information that is responsive to the specific request, even if

16   responding to the request requires a manufacturer to provide

17   information on unapproved or uncleared indications or

18   conditions of use.  Under these circumstances, such responses

19   may not be considered as evidence of a new or different

02:14 20   "intended use."

21        The term "label" and "labeling" have specific meanings

22   under the FDCA.  "Label" means any written, printed or graphic

23   matter upon the immediate container of a product.  All words,

24   statements and other information required to be on the label

25   must also appear on the outside container or wrapper.

1          "Labeling" is broader than the term "label."

2    "Labeling" means all labels, as well as any other written,

3    printed, or graphic matter on or accompanying the product in

4    interstate commerce.  Labeling may include promotional material

5    or literature, including package inserts, pamphlets, mailing

6    pieces, fax bulletins, reprints of press releases, information

7    posted on internet websites selling the product, and all of the

8    literature from the manufacturer that supplements or explains

9    the product in connection with its sale.

02:15 10          Okay.  That largely concludes my instructions on the

11   FDCA.  We'll come back and focus on the specific elements of

12   the specific charges after you take a 15-minute break.  And I

13   may give you a little longer.  So around 2:25, 2:30, okay?

14      (Recess taken.)

15          THE COURT:  All right.  I'm going to conclude the

16   instructions, but first I want to give you one additional

17   instruction in response to closing arguments today.

18          I want to reiterate that the burden of proof is always

19   on the government.  The defendant has no obligation to call any

02:41 20   witnesses.  I further instruct you that only the government has

21   the ability to immunize witnesses.  An unimmunized witness may,

22   for all practical purposes, be unavailable to testify.

23          All right.  I'm going to finish up the charge now.

24   Now I'm going to give you some more specific instructions on

25   crimes charged in the indictment and the elements of the

offenses that the government must prove beyond a reasonable

doubt.  I will explain each of the charges alleged in the 14

counts, although I am not going to do it in numerical order.

Having just discussed the Food, Drug and Cosmetic Act,

I'm going to begin with the adulteration and misbranding

charges (Counts 9 through 18) and then move on to Count 1,

which alleges a conspiracy to violate the FDCA, and finally the

wire fraud counts, Counts 5 through 7.

Counts 9 through 18 charge the defendant with

violations of the Federal Food, Drug and Cosmetic Act, which

I've been referring to as the FDCA.  Counts 9 through 13 of the

indictment charge the defendants with introducing or causing

the introduction of an adulterated medical device into

interstate commerce, and Counts 14 through 18 of the indictment

charge the defendants with introducing or causing introduction

of a misbranded medical device in interstate commerce.  Each of

these charges requires the government to prove three elements

beyond a reasonable doubt.  For misbranding and adulteration,

the first two elements are the same, although the third is

different for the two charges.  I'm going to begin by

instructing you on the two elements that are common to both

adulteration and misbranding and finally instruct on the third

element that the government must prove beyond a reasonable

doubt first for adulteration then for misbranding.

The first element they must prove beyond a reasonable

doubt for both misbranding and adulteration is that the Stratus

was a "device" regulated under the FDCA.  For purposes of your

deliberations, the parties have stipulated that the Stratus is

a prescription medical device as those terms are defined in the

FDCA.  The second element the government must prove beyond a

reasonable doubt for both adulteration and misbranding is that

the defendant caused the Stratus to be delivered or introduced

into interstate commerce.  "Interstate commerce" means commerce

between any state and any place outside of that state,

including other states or a foreign country.  With regards to

Counts 9 through 13, the indictment alleges the following:

Count 9 concerns a Stratus shipped to Hospital 1 in

South Weymouth on approximately October 21, 2009

Count 10 concerns a Stratus shipped to Hospital 2 in

Plymouth on approximately November 6, 2009

Count 11, a Stratus shipped to Hospital 3 in Lowell on

approximately November 17, 2009

Count 12, a Stratus shipped to Hospital 4 in Hyannis

on approximately August 11, 2010

Count 13, a Stratus shipped to Hospital 5 in Worcester

on approximately February 25, 2011

With regards to Counts 14 through 18, the indictment

alleges the following:

Count 14 concerns a Stratus shipped to Hospital 4 in

Hyannis on approximately December 15, 2009

Count 15, a Stratus shipped to Hospital 1 in South
Weymouth on approximately January 19, 2010

Count 16, a Stratus shipped to Hospital 2 in Plymouth
on approximately January 10, 2010

Count 17, a Stratus shipped to Hospital 1 in South
Weymouth on approximately October 13, 2010

Count 18, a Stratus shipped to Hospital 5 in Worcester
on approximately May 27, 2011.

The government and the parties -- and the defendants
have stipulated that the Stratus shipments identified in Counts
1 and 9 through 18 were introduced into and traveled in
interstate commerce, but you will still need to determine
whether a defendant caused that to happen.

For the crime of introducing or causing the
introduction of adulterated devices in interstate commerce
charged in Counts 9 through 13 of the indictment, the third
element that the government must prove beyond a reasonable
doubt is that the Stratus was adulterated.

A medical device is adulterated if it is a Class III
device that is required to have but does not have an
FDA-approved premarket approval or "PMA" application for
particular intended use and is not otherwise exempt from such
approval.

If a device has been classified by the FDA as a Class
I or Class II device under a 510(k) clearance, then it is not a

Class III device for the intended use for which it has been
cleared, although it would be a Class III device for any
uncleared or unapproved intended use that is significantly
different from the use for which it was cleared unless it is
Class I exempt.  The fact that a physician buys a cleared
device in order to use it for an off-label purpose does not
change the classification of the device.

In sum, for you to find a defendant guilty of these
counts, the adulteration counts, the government must prove each
of the following elements beyond a reasonable doubt:

One:  That the Stratus products listed in Counts 9
through 13 were "devices;"

Two:  That the defendant caused those products to be
introduced in interstate commerce;

Three:  That those products were adulterated.

Counts 14 through 18 of the indictment charge the
defendants with introducing or causing the introduction of a
misbranded device in interstate commerce.  In order to find the
defendant guilty of any of these charges, you must find that
the government has proved the following elements beyond a
reasonable doubt:

One:  That the Stratus products listed in Counts 14
through 18 were "devices;"

Two:  That the defendant caused those products to be
introduced in interstate commerce and;

1          Three:  That those products were "misbranded."

2          I defined the terms "device" and "interstate commerce"

3     earlier in these instructions, and they have the same meaning

4     here.

5          Counts 14 through 18 allege that the Stratus devices

6     were misbranded in three specific ways, which I will discuss in

7     a minute.  To find either defendant guilty of introducing or

8     causing the introduction of misbranded devices into interstate

9     commerce, you must find beyond a reasonable doubt that the

02:47 10    Stratus devices were misbranded in at least one of these three

11    ways.  You do not need to find that the devices were misbranded

12    in more than one way, but you must be unanimous as to which

13    type of misbranding, if any, the government has proven beyond a

14    reasonable doubt.

15         First, a device is misbranded if its labeling is

16    materially false or misleading in any particular.  I instructed

17    you earlier on the definition of "labeling" and you should use

18    that same definition throughout.

19         In determining whether a device's labeling is

02:47 20    misleading, you may take into account, among other things, not

21    only representations made or suggested by statements, word,

22    design, device, or any combination thereof, but also the extent

23    to which the labeling fails to reveal facts material in light

24    of such representations or with respect to such consequences

25    which may result from the use of the device under the

1    conditions of use prescribed in the labeling or under such

2    conditions of use as are customary or usual.  Half truths or

3    incomplete statements that omit material information can make a

4    label false and misleading if the omitted information is

5    necessary to avoid making the statement misleading.

6        A fact is "material" if it has a natural tendency to

7    influence or is capable of influencing the decision of the

8    decisionmaker to whom it was addressed.

9        Second, a medical device is also misbranded if the

02:48 10   manufacturer introduces the device into interstate commerce for

11   an intended use that is significantly different from the use

12   covered by its 510(k) clearance and without submitting a new

13   premarket notification to the FDA regarding the different

14   intended use.

15       Finally, a device is misbranded if its labeling does

16   not bear adequate directions for its intended use.

17       "Adequate directions for use" for a prescription

18   device like the Stratus means that any labeling that furnishes

19   or purports to furnish information for the use of the device

02:49 20   must bear adequate information for such use, including

21   indications, effects, routes, methods and frequency or duration

22   of administration and any relevant hazard, contraindications,

23   side effects and precautions under which practitioners licensed

24   by law to use the device can use it safely and for the purpose

25   for which it is intended, including all purposes for which it

was advertised or represented.  This information may be omitted
from a package from which the device is to be dispensed, if,
but only if, the directions, hazards, warnings, and other
information are commonly known by practitioners licensed by law
to use the device and there is no labeling on or within the
package from which the device is to be dispensed that furnishes
or purports to furnish any information for the use of the
device.

            With regards to Count 9 through 18, you must first
determine whether the government has proved beyond a reasonable
doubt that a defendant caused the introduction into interstate
commerce of adulterated or misbranded devices.  If you find
that a defendant caused the introduction into interstate
commerce of adulterated or misbranded devices, you should then
consider when the defendant held a "position of responsibility"
within Acclarent and the authority to prevent or to correct the
adulteration or misbranding violations charged in the
indictment.  If you find beyond a reasonable doubt that the
defendant held such a position of responsibility with respect
to the adulteration or misbranding counts charged in the
indictment but failed to prevent or correct the violations, you
may find the defendant guilty of causing introduction of
adulterated or misbranded devices into interstate commerce,
even if he did not intend the devices to become adulterated or
misbranded and did not personally know about the specific

1    circumstances that caused the devices to become adulterated or

2    misbranded.

3         A defendant cannot be convicted solely based on his

4    position in the company or if you find it was impossible for

5    him to prevent or correct the adulteration or misbranding

6    charged in the indictment.  Rather, the government must prove

7    beyond a reasonable doubt that the defendant had the authority

8    to prevent or correct the specific adulteration or misbranding

9    charged here and that preventing the introduction of misbranded

02:51 10   or adulterated devices into interstate commerce was not

11   impossible.

12        Good faith, which I will discuss in more detail

13   shortly, is not a defense because the law does not require a

14   defendant to know about or to actively have engaged in

15   wrongdoing in order to be held responsible for his company's

16   distribution of adulterated or misbranded devices.  All that

17   the law requires is that the defendant held such a position of

18   responsibility within the company and that he had sufficient

19   authority to prevent or correct the violation and that the

02:51 20   violation nonetheless occurred or was not corrected.

21        Again, with regard to Counts 9 through 18, if for a

22   particular count and defendant, you do not find beyond a

23   reasonable doubt that the defendant caused the introduction of

24   adulterated or misbranded devices as charged in that count, you

25   should acquit that defendant on that count and move on to the

next.  If, however, you do find beyond a reasonable doubt that

a defendant caused the introduction of adulterated and/or

misbranded devices into interstate commerce as charged in each

of Counts 9 through 18, you must then go on to determine

whether the government has also proved beyond a reasonable

doubt that the defendant committed the adulteration or

misbranding violations with the intent to defraud or mislead.

There will be two separate questions that you will have to

answer.  First, consistent with my instructions, did the

defendant cause the introduction into interstate commerce of

adulterated and/or misbranded devices?  If no, then move on to

the next count.  But if yes, you must then decide if he did so

with the intent to defraud or mislead.

A defendant acts with intent to defraud or mislead

under the FDCA if the defendant acts with a specific intent to

defraud or mislead either the government or individuals.

To act with the intent to defraud or mislead, the

government means to act with the specific intent to interfere

with or obstruct a lawful government function by deceit, craft,

trickery or dishonesty ordinarily for the purpose of either

causing some financial loss to another or bringing about some

financial gain to the defendant or another.  The government

must prove beyond a reasonable doubt that there was an intent

to defraud or mislead an identifiable regulatory agency rather

than just a general intent to defraud or mislead.  An intent to

defraud or mislead the government can be demonstrated through

evidence that the defendant took steps, in connection with the

distribution of products, to conceal material facts from the

FDA or that a defendant acted with an intent to materially

deceive the FDA and thereby hinder the FDA in carrying out its

regulatory responsibilities.

An intent to defraud or mislead individuals can be

proven by showing that a defendant knowingly made or caused

materially false statements or representations to be made or

that he intentionally concealed material facts for the purpose

of misleading.  It is not necessary for you to find that anyone

was actually misled or defrauded as long as you find beyond a

reasonable doubt that the defendant acted with the intent to

mislead or defraud.

In order to prove beyond a reasonable doubt that each

defendant distributed an adulterated or misbranded device with

the specific intent to defraud or mislead, the government must

prove beyond a reasonable doubt that each defendant knew the

conduct was unlawful and nevertheless engaged in the conduct of

the specific intent to disobey or disregard the known legal

duties.

The intent to defraud or mislead must be connected to

the alleged adulteration or misbranding violation.  That is the

government must prove beyond a reasonable doubt that the

defendant you're considering caused the introduction of

misbranded or adulterated devices into interstate commerce with
the intent to defraud or mislead.

To prove intent to defraud or mislead, the government
must prove beyond a reasonable doubt that a defendant did not
act in good faith but instead acted with a specific intent to
defraud or mislead.  As I will discuss next, good faith is a
complete defense because it is inconsistent with the intent to
defraud or mislead.  If you find a defendant did not have an
intent to defraud or mislead or if you have reasonable doubt as
to whether a defendant had an intent to defraud or mislead or
whether he acted in good faith, you must find that the
government has failed to prove that the defendant acted with
the intent to defraud or mislead.

It can be difficult to prove a defendant's state of
mind directly, but a defendant's state of mind can be proved
indirectly from the surrounding circumstances.  This includes
things such as what the defendant said or did, how the
defendant acted, and any other facts or circumstances in
evidence that bear on the defendant's intent.

Good Faith.  A defendant's good faith is a complete
defense to the portions of adulteration and misbranding charges
that require you to find an intent to defraud or mislead.  This
is the second question relating to misbranding and adulteration
on your verdict forms.  Good faith is not relevant to the first
question where you must determine whether a defendant caused

1   the introduction of adulterated or misbranded device in

2   interstate commerce.  Good faith is also a complete defense to

3   any other charge that requires the government to prove that a

4   defendant acted knowingly and willfully or with an intent to

5   defraud or mislead.  This is because if a defendant acted in

6   good faith, then the defendant necessarily lacked the knowledge

7   and willfulness or specific intent to defraud or mislead that

8   the government must prove beyond a reasonable doubt in order to

9   convict the defendant of a count that requires proof of such a

10  state of mind.  Again, not all counts charged in this case

11  require proof of such a state of mind, and this instruction

12  applies only to those that do.

13      A defendant did not act in "good faith" if, even

14  though he honestly held a certain opinion or belief, he also

15  knowingly made false or fraudulent statements, representations

16  or promises to others.

17      If a person acts either on a belief or an opinion

18  honestly held that his actions were not criminal, that person's

19  actions are not criminal simply because the belief or opinion

20  turns out to be incorrect, inaccurate, or wrong.

21      A defendant does not bear the burden of proving good

22  faith.  Rather, it is the government's burden to prove beyond a

23  reasonable doubt that a defendant did not act in good faith,

24  but instead acted with a specific intent to defraud or mislead

25  with regard to those counts that require proof of the specific

1  intent to defraud or mislead.

2      If you find a defendant did not have an intent to

3  defraud or mislead, or if you have reasonable doubt as to

4  whether a defendant had intent to defraud or mislead or whether

5  he acted in good faith, you must find the defendant not guilty

6  of any charge that requires proof of such intent, including

7  wire fraud, which I will discuss shortly.

8      Now for Count 1.  Counts 9 through 18 charge

9  substantive violations of the FDCA, by which I mean actual

02:57 10  violations of the FDCA.  Count 1, the conspiracy count, by

11  contrast, charges the defendants with conspiring to violate the

12  FDCA.  The crime is the agreement to commit the FDCA offenses

13  rather than the actual commission of the offense.  To find a

14  defendant guilty of Count 1, you must unanimously find that the

15  government has proved the following three elements beyond a

16  reasonable doubt:

17      First, that at least two people agreed to violate the

18  Federal Food, Drug and Cosmetic Act in the ways alleged in

19  Count 1;

02:57 20      Second, that the defendant willfully joined the

21  agreement, intending that the charged crime or crimes be

22  committed; and

23      Third, that at least one co-conspirator committed at

24  least one overt act during the period of the conspiracy in an

25  effort to further the purpose of the conspiracy.

1          A conspiracy is an agreement, spoken or unspoken.  The

2     conspiracy does not have to be a formal agreement or plan in

3     which everyone involved sat down together and worked out all

4     the details.

5          But the government must prove beyond a reasonable

6     doubt that those who were involved shared a general

7     understanding about the crime.  Mere similarity of conduct

8     among various people or the fact that they may have associated

9     with each other or discussed common aims and interests does not

02:58 10   necessarily establish proof of the existence of a conspiracy,

11    but you may consider such factors.

12         To act "willfully" means to act voluntarily and

13    intelligently and with the specific intent that the underlying

14    crime be committed.  That is to say, with bad purpose, either

15    to disobey or disregard the law, not to act by ignorance,

16    accident or mistake.  The government must prove two types of

17    intent beyond a reasonable doubt to establish that a defendant

18    willfully joined the conspiracy:  One, an intent to agree, and

19    two, an intent, whether reasonable or not, that the underlying

02:59 20   crime be committed.  In considering whether either defendant

21    had the specific intent to commit the underlying FDCA offenses,

22    you should apply the instructions on intent that I previously

23    gave you for each of the underlying offenses.  Good faith is a

24    defense to a charge of conspiracy.  Mere presence at the scene

25    of a crime is not alone enough, but you may consider it among

1    other factors.  Intent may be inferred from the surrounding

2    circumstances.

3        Proof that a defendant willfully joined the agreement

4    must be based upon evidence of his own words or actions.  You

5    need not find that a defendant agreed specifically to or knew

6    about all of the details of the crime or knew every other

7    co-conspirator or that he participated in each act of the

8    agreement or played a major role.  The government must prove

9    beyond a reasonable doubt that he knew the essential features

02:59 10    and general aims of the criminal venture.  Even if the

11    defendant was not part of the agreement at the very start, he

12    can be found guilty of conspiracy if the government proves that

13    he willfully joined the agreement later.  On the other hand, a

14    person who has no knowledge of a conspiracy, but simply happens

15    to act in a way that furthers some object or purpose of the

16    conspiracy, does not thereby become a co-conspirator.

17        An overt act is any act knowingly committed by one or

18    more of the conspirators in an effort to accomplish some part

19    of the conspiracy.  Only one overt act has to be proven.  The

03:00 20    government is not required to prove that one of these two

21    defendants personally committed or knew about the overt act.

22    It is sufficient if one co-conspirator committed one overt act

23    at some time during the period of the conspiracy.

24        The government does not have to prove that the

25    conspiracy succeeded or was achieved.  The crime of conspiracy

is complete upon the agreement to commit the underlying crime
and the commission of one overt act by at least one
co-conspirator.

Some of the people who have been involved in these
events are not on trial.  There is no requirement that all
members of a conspiracy be charged and prosecuted, or tried
together in one proceeding.  Your task is limited to
considering the charges contained in the indictment and only as
to the defendants before you.

03:01    Finally, the defendants are charged in Counts 5
through 7 with wire fraud.  These counts generally allege that
the defendants participated in a fraudulent scheme to sell the
Stratus for an intended use that was not FDA-cleared or
approved and to hide that conduct from the FDA and actual and
potential investors and purchasers of Acclarent in order to
increase Acclarent's revenues and valuation.  To find a
defendant guilty of wire fraud, you must find that the
government has proved each of the following four elements
beyond a reasonable doubt:

03:01    One:  That there was a scheme, substantially as
charged in the indictment, to defraud or to obtain money or
property by means or fraudulent pretenses;

Two:  That the scheme to defraud involved the
misrepresentation or concealment of a material fact or matter
or the scheme to obtain money or property by means of false or

1    fraudulent pretenses involved a false statement, assertion,

2    half-truth or knowing concealment concerning a material fact or

3    matter;

4            Three:  That the defendant knowingly and willfully

5    participated in the scheme with the intent to defraud; and

6            Four:  That for the purpose of executing the scheme or

7    in furtherance of the scheme, the defendant either caused

8    interstate wire communication, in this case the e-mails charged

9    in the indictment, or it was reasonably foreseeable that for

03:02 10    the purpose of executing the scheme or in furtherance of the

11    scheme, the interstate e-mails would be sent, on or about the

12    dates alleged.

13            A scheme includes any plan, pattern or course of

14    action.  The government does not need to prove all of the

15    details alleged in the indictment concerning the precise nature

16    and purpose of the scheme.  The government also does not have

17    to prove that the alleged scheme actually succeeded in

18    defrauding or misleading anyone.  What must be proven beyond a

19    reasonable doubt is that a defendant knowingly participated in

03:02 20    a scheme to defraud that was substantially as charged in the

21    indictment.

22            The term "defraud" means to deceive another by

23    misrepresenting or concealing a material fact in order to

24    obtain money or property.  To defraud, the deceit must cause

25    someone to do that which they would either otherwise not do

which results in deprivation of money or property or causes

another to obtain money or property as a result of the fraud.

A regulatory clearance does not qualify as money or property

for purposes of the wire fraud statute.

The term "false or fraudulent pretenses,

representations or promises" means any false statements or

assertions (1) that concern a material aspect of the matter in

question, (2) that were either known to be untrue when made or

unmade with reckless indifference to their truth, and (3) that

were made with the intent to defraud.

A false representation can take several forms and can

include the following:

1.  A knowingly false statement about a material

matter that is intended to deceive.

2.  A "half-truth," meaning a statement about a

material matter that is literally true but is intentionally

made deceptive by leaving out important additional information;

and

3.  An intentional failure to disclose material

information that one has a duty to disclose for the purpose of

deceiving.

With regards to number 3, generally a failure to

disclose alone is not sufficient to establish fraud.  A person

or a business has a duty to disclose information only if the

law imposes such a duty.  I instruct you that a person who

submits a written request to the FDA for an order of

substantial equivalence, also known as a 510(k) submission, has

a duty to disclose in the submission all facts material to the

determination of substantial equivalency.

A "material" fact or matter is one that has a natural

tendency to influence or is capable of influencing the decision

of the decisionmaker to whom it was addressed.

To act "knowingly" means to act voluntarily and

intentionally and not because of ignorance, mistake or

accident.

An act or failure to act is "willful" if done

voluntarily and intentionally, and with the specific intent to

do something the law forbids, or with the specific intent to

fail to do something the law requires to be done; that is to

say, with bad purpose either to disobey or disregard the law.

Thus, if a defendant acted in good faith, he cannot be guilty

of the crime of wire fraud.  The burden to prove intent, as

with all other elements of the of the crime, rests with the

government.

Again, intent or knowledge may not ordinarily be

proven directly because there is no way of directly

scrutinizing the ways of the working mind.  In determining what

a defendant knew or intended at a particular time, you may

consider any statements made or acts done or omitted by him and

all the facts and circumstances received in evidence that may

aid in your determination of his knowledge or intent.  You may
infer, but you certainly are not required to infer, that a
person intends the natural and probable consequences of acts
knowingly done or knowingly omitted.  It is entirely up to you,
however, to decide what facts are proven by the evidence
received during this trial.

An "interstate wire communication" includes an e-mail
transmission or other internet communication.  The indictment
alleges three specific e-mails, one for each of Counts 5, 6 and
7.

Count 5 alleges an e-mail sent on November 13, 2009
from Sales Rep A, Barbara Logan, to Clinic B in Boston.  Count
6 alleges an e-mail sent on November 16, 2009 from Sales Rep A,
Barbara Logan, to Dr. C in Boston.  And Count 7 alleges an
e-mail sent on November 19, 2009 from Mr. Fabian to Training
Team in Massachusetts.

The wire communication does not itself have to be
essential to the scheme but it must have been made for the
purpose of carrying it out.  There's no requirement that either
defendant is personally responsible for the wire communication,
that the wire communication itself was fraudulent, or that the
use of wire communications facilities in interstate commerce
was intended as the specific or exclusive means of
accomplishing the alleged fraud.  But the government must prove
beyond a reasonable doubt that each defendant knew, or could

1    reasonably have foreseen, that the use of a wire communication,

2    in furtherance or for the purpose of executing the scheme,

3    would follow in the course of the scheme.

4            The government and defendants have stipulated that the

5    e-mails and other wires identified in Counts 1 and 5 through 7

6    were interstate wire communications and traveled in interstate

7    commerce.

8            In Counts 5 through 7 and Counts 9 through 18, each

9    defendant has been charged both as a principal and an aider or

03:07  10    abettor.  I have already instructed you on the elements of the

11    offenses that need to be proven beyond a reasonable doubt for

12    you to find either defendant guilty as a principal.

13            A person may also be found guilty of each of those

14    counts if he aided or abetted another in committing the charged

15    offense.  To "aid and abet" means intentionally to help someone

16    else commit the charged crime.  To establish aiding and

17    abetting, the government must prove beyond a reasonable doubt:

18            One, that the crime charged was actually committed by

19    someone.  This person is called the "principal."

03:07  20            Second, that the defendant took an affirmative act to

21    help or cause the commission of the charged offense; and

22            Third, that the defendant intended to help or cause

23    the commission of the charged offense.

24            The second element, the "affirmative act" element, can

25    be satisfied without proof that the defendant participated in

1    each and every element of the charged offense.  It is enough

2    that the defendant assisted in the commission of the charged

3    offense or caused the charged offense to be committed.

4         The third element, the "intent" element is satisfied

5    if a defendant had advance knowledge of the facts that make the

6    principal's conduct criminal.  "Advance knowledge" means

7    knowledge at a time the defendant can opt to walk away.

8         A general suspicion that an unlawful act may occur or

9    that something criminal is happening is not enough.  Mere

03:08 10   presence at the scene of the charged offense and knowledge that

11   the charged offense is being committed are also not sufficient

12   to constitute aiding and abetting.  But you may consider these

13   things among other factors in determining whether the

14   government has met its burden.

15        I'm going to take a pause and see everyone at sidebar.

16   They have a chance to comment on my instructions, make any

17   corrections.  I will be right back.  Stand up, stretch.  Get

18   your blood flowing.  We'll be right back.

19              * * * * * * * * * *

03:14 20        THE COURT:  All right.  Everybody should now have a

21   copy of the verdict form.  When you go back to the jury room,

22   you will actually only have one of those, but I wanted you to

23   each have one in your possession for when I'm giving my final

24   instruction.

25        It is now time for you to start your deliberations.  I

1   just want to say a few words about your deliberations.

2        Each of you must decide the case for yourself, but you

3   should do so only after considering all of the evidence and

4   listening to the views of your fellow jurors.  You should not

5   hesitate to reconsider your views from time to time and to

6   change them if you are persuaded that that is appropriate.  But

7   do not come to a decision simply because other jurors insist

8   that it is right, and do not surrender an honest belief about

9   the weight and effect of the evidence just to reach a verdict.

03:15 10      Your verdict must be unanimous as to each of the

11  questions I'm going to ask you to answer on the verdict form.

12        I'm going to ask juror number 1 to serve as

13  foreperson.  That's you in the first seat there.  Your new

14  number 1, not your old number 1.  The foreperson will have the

15  same voice and same vote as other deliberating jurors.  The

16  fact that one of you is foreperson does not give that person

17  special status in your deliberations.  You are all equal.  The

18  foreperson will act, to the extent helpful, as the moderator of

19  the discussion and will serve as the jury's spokesperson.  The

03:15 20  foreperson's most important obligation is to insure that any

21  juror who wishes to be heard on any issue has a full and fair

22  opportunity to be heard by his or her fellow jurors.

23        If you as a group decide to take a recess during your

24  deliberations, you should stop discussing the case until the

25  recess is over.  Do not discuss the case during a recess when

1    all jurors are present.

2         If it becomes necessary during your deliberations to

3    communicate with me, you may do so by sending a note through

4    the court officer.  No member of the jury should ever attempt

5    to communicate with me, except by such a signed writing.  If

6    you do communicate with me, do not tell me in the note how you

7    stand numerically or otherwise, on any issue before you, until

8    after you've reached a verdict.  You are not to communicate

9    with anyone but me about the case outside the jury room, and

03:16 10    then only in writing.  In turn, I will communicate with you

11    only in writing or orally here in open court on anything

12    concerning the case.  On matters touching simply on

13    arrangements for your meals, schedule and convenience, you are

14    free to communicate with the court officer or Karen orally

15    rather than in writing.

16         When you've reached your verdict, your answers will be

17    recorded on what is called the verdict slip or the verdict

18    form.  That is simply the written notice of the decision you

19    reach in this case.

03:16 20         I'm going to ask you all to pull out your verdict

21    forms.  I'm just going to walk you quickly through it.  You

22    will see that the counts in the verdict form are in numerical

23    order, which is not the way I instructed you.  You will also

24    see that the defendant -- it is done by defendant but by count

25    or by group of counts.  You may consider any count in any order

that you want.  You may consider one defendant and then go to

the second defendant.  You can mix and match.  However you want

to handle your deliberations is your prerogative.  I just

organized the verdict form in a way that I thought made sense,

but how you conduct your deliberations is entirely up to you.

So the verdict form begins with Count 1, and you see

that it asks you to make a decision as to Mr. Facteau on

whether you find unanimously that the government has proven

beyond a reasonable doubt that he's guilty of that offense.  If

03:17  you find him not guilty of that offense, turn to the next page.

If you do find him guilty of that offense, Count 1 charges

conspiracy to introduce adulterated or misbranded devices.  If

you find him guilty of the conspiracy, you then have to let us

know which theory or both that you have found him guilty based

on.  That's the second question on that first page.  You then

go and do the same exercise on the next page for the defendant,

Mr. Fabian.

On page 3, Counts 5 through 7 are both there for both

defendants and are very straightforward.  You then go to Counts

03:18  9 through 13 on page 4, which go to introduction of an

adulterated device.  That's set up so that it's Mr. Facteau,

Counts 9 through 13, and then Mr. Fabian, Counts 9 through 13.

Again, any way you want is fine, but that's the way the verdict

form was set up.  On each of those counts for each defendant,

you will find first whether the government has proven beyond a

1    reasonable doubt that he's guilty of the offense.  And then if

2    you find no, you go on to the next count.  If you find yes,

3    your second decision is whether or not it was done with the

4    intent to defraud or mislead.  That's the same for Counts 9

5    through 13 for both defendants, which takes us to page 10 of

6    the verdict form, which is counts 14 through 18.  And it's set

7    up very much in the same way, first off, all those counts for

8    Mr. Facteau and then all those counts for Mr. Fabian.

9          For the misbranding counts, introduction of misbranded

03:19 10   device, you first make a decision about whether or not you find

11   the government has proven beyond a reasonable doubt that the

12   defendant is guilty of the offense.  If you find him not

13   guilty, you go on to the next count.  If you find him guilty,

14   then you have to tell him which of the three misbranding

15   theories you find him guilty of, and that decision must be

16   unanimous.

17          I guess, just to go back to Count 1 for a second, same

18   thing.  When you're telling us which theory or theories you

19   found proved, you have to be unanimous on that decision as

03:19 20   well.  Those are the misbranding counts.

21          Then the very last page of the verdict form just

22   requires your foreperson to sign and date it and represent that

23   those are the unanimous findings of the jury.

24          After you've reached a unanimous agreement on the

25   form, your foreperson will fill in the verdict form, sign and

1    date it, and tell the court officer outside your door that you

2    are ready to return to the courtroom.  After you return to the

3    courtroom, your foreperson will deliver the completed verdict

4    form as directed in open court.

5              Anything else from anybody that we haven't already

6    been heard on before I send them out?  Okay.

7    (Jury exits, 3:19 p.m.)

1

2                    CERTIFICATE OF OFFICIAL REPORTER

3

4              I, Kelly Mortellite, Registered Merit Reporter

5    and Certified Realtime Reporter, in and for the United States

6    District Court for the District of Massachusetts, do hereby

7    certify that pursuant to Section 753, Title 28, United States

8    Code that the foregoing is a true and correct transcript of the

9    stenographically reported proceedings held in the

10   above-entitled matter and that the transcript page format is in

11   conformance with the regulations of the Judicial Conference of

12   the United States.

13                    Dated this 20th day of July, 2016.

14

15                    /s/ Kelly Mortellite

16                    _____

17                    Kelly Mortellite, RMR, CRR

18                    Official Court Reporter

19

10:33 20

21

22

23

24

25